Irving J. Cowan, Respondent, *v.* City of Buffalo, New York, and Others, Appellants.*

Fourth Department, May 13, 1936.

*Affg. 157 Misc. 71.

*Gregory U. Harmon, Corporation Counsel [Charles S. McDonough, Assistant Corporation Counsel,* of counsel], for the appellants.

*Guy B. Moore [Eli Roth* with him on the brief], for the respondent.

EDGCOMB, J. This appeal brings up for review the propriety of a temporary injunction restraining the city of Buffalo, its commissioner of police and police captain, from arresting or prosecuting the plaintiff for the violation of an ordinance of said city, making it unlawful " for any person, firm or corporation to keep open and operate any outdoor or open-air stand or market for the sale of fresh fruits and vegetables on Sunday or on week days before five o'clock A. M. or after seven o'clock P. M., except that on Saturday and any day preceding a legal holiday, such stand or market may be kept open and operated as aforesaid up to and including ten o'clock P. M.," and from further interfering with the plaintiff or his business under the pretended authority of said ordinance, or attempting to enforce the same against said plaintiff. The ordinance makes the violator of its provisions liable to a fine or penalty of not to exceed $250 for each offense.

Plaintiff conducts an open market for the sale of fruits and vegetables in the city of Buffalo, and has upwards of $15,000 invested in his business. He has kept open after the prohibited hours, and has been arrested for one such dereliction. He alleges that the defendants threaten to continue to arrest and prosecute him for all subsequent violations of this regulation. Asserting that such action on the part of the defendants is an encroachment upon his constitutional and legal rights, and will seriously impair, if not completely destroy, his business, and expose him to irremediable injury,

he brings this action in equity to restrain the defendants from enforcing the provisions of said ordinance.

The right to use and enjoy one's property is safeguarded by both the Federal and State Constitutions, and any law which unjustly interferes therewith deprives the owner of its enjoyment, and is as much a violation of the fundamental law of the land as the actual physical taking of the property would be. (*Matter of Jacobs*, 98 N. Y. 98, 105.)

The State, nevertheless, has the power, by appropriate legislation, to regulate business in the interest of the community at large, and to protect the public health, safety, morals and well being. All property is held subject to such regulations as are necessary for the common good. (*Commonwealth* v. *Alger*, 7 Cush. 53, 84; *Bertholf* v. *O'Reilly*, 74 N. Y. 509, 521.)

Plaintiff's business is a perfectly legitimate and harmless enterprise, and is essentially private in its nature. It serves, to a greater or lesser degree, the community in which it is located. It cannot be regulated upon the theory that it bears such a relation to the community at large as to charge it with a public use. (*New State Ice Co.* v. *Liebmann*, 285 U. S. 262, 277; *Wolff Packing Co.* v. *Industrial Court*, 262 id. 522, 537; *United States* v. *Bernstein*, 267 Fed. 295, 296.)

If the legislation is to be upheld, it must be upon the theory that it is a proper exercise of the police power of the State. But to justify the ordinance upon that ground, it must have for its object the improvement of the social, moral, physical or economic condition of the public in general, and the means employed must be reasonably necessary for the accomplishment of that end. (*Ives* v. *South Buffalo R. Co.*, 201 N. Y. 271, 301; *Colon* v. *Lisk*, 153 id. 188, 196; *Lawton* v. *Steele*, 152 U. S. 133, 137.)

It is beyond the power of the State to arbitrarily interfere with private business, or to impose unreasonable or unnecessary restrictions thereon, under the guise of promoting the public welfare. (*People* v. *Gillson*, 109 N. Y. 389, 401; *People* v. *Marx*, 99 id. 377, 386, 387; *People* v. *Ewer*, 141 id. 129, 135; *Matter of Jacobs*, 98 id. 98, 109; *New State Ice Co.* v. *Liebmann*, 285 U. S. 262, 278; *Fairmont Creamery Co.* v. *Minnesota*, 274 id. 1, 9–11; *Liggett Co.* v. *Baldridge*, 278 id. 105, 113; *Burns Baking Co.* v. *Bryan*, 264 id. 504, 513; *Austin* v. *Murray*, 16 Pick. 121; *Commonwealth* v. *Alger*, 7 Cush. 53, 84.)

The defendants urge that the reasonableness of the regulation is not open to question here, because, they say, it was passed pursuant to a special grant from the Legislature, and that, under such

circumstances, the court will not, even though the act may be unwise, attempt to control the judgment of the law-making body.

The ordinance was adopted pursuant to a provision of the city charter (§ 33, subd. 15) which gives the common council power " To regulate the hours during which any establishment or place may be open for the sale of goods, wares or merchandise." (Added by Laws of 1935, chap. 611.)

" Before legislative authority to enact an ordinance can be said to be specific the grant must define ' its details and mode of enforcement.' (*People ex rel. Knoblauch* v. *Warden, etc.*, 216 N. Y. 154, 162.) The power is general when ' the manner of exercising it is not specified.' (*Village of Carthage* v. *Frederick*, 122 N. Y. 268.) Or when the ordinance has not been expressly ratified by the Legislature. [*Matter of Stubbe* v. *Adamson*, 220 N. Y. 459; *Anderson* v. *Steinway & Sons*, 178 App. Div. 507, 517.] " (CROUCH, J., in *Safee* v. *City of Buffalo*, 204 App. Div. 561, 563, 564.)

It appearing that the ordinance in question was enacted under general rather than specific authority, we may inquire into its reasonableness. If it appears to be arbitrary, capricious or unreasonable, it cannot be upheld. (*Safee* v. *City of Buffalo*, 204 App. Div. 561; *People ex rel. Knoblauch* v. *Warden, etc.*, 216 N. Y. 154, 162; *Matter of Stubbe* v. *Adamson*, 220 id. 459, 465; *Village of Carthage* v. *Frederick*, 122 id. 268.)

While the presumption exists that the common council, in passing this legislation, acted in good faith, and in an honest belief that its adoption would be beneficial to the public at large, and while the burden is on him who asserts otherwise (*Safee* v. *City of Buffalo*, 204 App. Div. 561, 564; *Mayor, etc.*, v. *Dry Dock, E. B. & B. R. R. Co.*, 133 N. Y. 104, 111, 112; *People ex rel. Knoblauch* v. *Warden, etc.*, 216 id. 154, 162; *Matter of Wulfsohn* v. *Burden*, 241 id. 288), nevertheless, if the facts and circumstances show that the regulation is not fairly adapted to cure a real or substantial evil, but is an arbitrary interference with the plaintiff's right to conduct his own private business as he sees fit, it is the duty of the court to declare the ordinance invalid. Reasonableness of a regulation is one of the inherent limitations to the police power.

What is the evil which made this legislation necessary? Is there any reasonable relation between such menace and the remedy proposed?

In answering these inquiries we may rely both upon the facts stated in the affidavits before us, and upon those of which we may take judicial notice. (*Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288, 295.)

The record is silent as to the necessity of this regulation, except for the statement of a patrolman to the effect that plaintiff's place of business is located in a congested traffic center of the city, where large quantities of dust are blown about the neighborhood to the detriment of foodstuffs left unprotected on the premises, and the further assertion of an inspector of the city health department that, due to the operation of the market both day and night, it is impossible to properly clean the premises. It is difficult to conceive how any injury caused by the blowing of dust upon the produce would be avoided or minimized by closing the market at seven o'clock in the evening, and leaving it open during the day.

If this is an evil to be guarded against, some remedy other than closing the establishment at seven P. M. must be resorted to. Even if the sale of the merchandise was prohibited, it would still be exposed to contamination from dust and dirt, unless it was adequately covered, and the ordinance is silent upon that subject.

It certainly would not require ten hours, from seven o'clock in the evening until five in the morning, to properly clean the racks and counters upon which the vegetables are placed.

Other theoretical advantages to be gained by the adoption of this ordinance are suggested in defendants' brief. It is unnecessary to detail them here. Suffice it to say that we deem them imaginary rather than real, and to fall far short of constituting any good reason for interfering with plaintiff's conduct of his business.

The legislation cannot be upheld upon the theory that it is a health measure by preventing employees from working long hours. The actual hours of employment are not necessarily coextensive with the time the stands are kept open.

While no two cases are exactly similar, the following authorities would seem to constitute a precedent for holding this ordinance arbitrary and unreasonable:

In *Saville* v. *Corless* (46 Utah, 495; 151 P. 51) an act of the Legislature, which provided that all mercantile and commercial houses in cities of 10,000 population or over should close at six o'clock in the evening, was held to be an arbitrary and unreasonable infringement upon the constitutional right of the plaintiff to enjoy, acquire and possess property.

In *Johnson* v. *Philadelphia* (94 Miss. 34; 47 So. 526) a municipal ordinance requiring skating rinks to be closed at six o'clock in the evening, and to remain closed until six o'clock the following morning, was held to be an unreasonable exercise of the police power of the State.

In *Ex Parte Harrell* (76 Fla. 4; 79 So. 166) an ordinance adopted by the city council of Tallahassee requiring ,under penalties of fine

and imprisonment, places of business to be closed at six-thirty P. M., was declared to be an unwarranted governmental interference with the personal rights of the merchants of the city.

In *Yee Gee* v. *City & County of San Francisco* (235 Fed. 757) it was held that an ordinance forbidding a person owning or employed in a public laundry from doing any work connected with such laundry between the hours of six P. M. and seven A. M. was void as an unjustified infringement of the liberty of the citizen in the prosecution of a legitimate occupation.

In *City of Buffalo* v. *Linsman* (113 App. Div. 584) a municipal ordinance forbidding the peddling of fruits and farm or garden produce on the city streets of Buffalo between five A. M. and one P. M. was declared void as being class legislation, and in restraint of trade, upon the ground that it was in no sense a proper regulation, or necessary for the preservation of the public health, or the good government of the city.

We fail to find any evil resulting to the public from keeping these stands open after seven o'clock in the evening, and we can conceive of no legitimate benefit which can flow to the public from the enforcement of the ordinance. On the other hand, the record discloses the fact that a large part of plaintiff's business is transacted after the prescribed closing hour. If the regulation is enforced, plaintiff's right to conduct a lawful business will not only be seriously interfered with, but the residents of the locality will be denied the privilege of doing their trading at a convenient hour, or will be forced to go to the city market, where there is no limitation as to the hours during which stands of this character may be kept open.

If the plaintiff can be made to close his place of business at seven P. M., what is to prevent the council from passing another ordinance tomorrow fixing the hour at six o'clock, and to follow that up with further legislation reducing the hours during which plaintiff can transact his business? Where is this regulation to end? It certainly should not be dependent upon the caprice or whim of the common council.

We do not pretend to say that the city cannot legally close markets of this character during some part of each twenty-four hours. That question is not before us, and we are not asked to establish any fixed or permanent guide to settle future controversies.

It is also claimed that the ordinance is violative of the Fourteenth Amendment to the Federal Constitution, which prohibits a State from denying any person within its jurisdiction the equal protection of the laws. In defining what shall constitute an open air stand or market, the ordinance provides that it " shall not include a stand or market within the boundaries of the public markets of the said

city." We are not told why a distinction should be made between an open-air stand within the boundaries of the city market and one just outside. If the public health, safety, morals or welfare are promoted by requiring one to be closed at seven o'clock in the evening, it is difficult to find a reason for permitting the other to remain open twenty-four hours of the day. There would seem to be the same necessity for closing one as the other. If the owner of a stand outside the limits of the city market is caught and held, while his competitor over the line is allowed to escape, the former is certainly denied the equal protection of the law.

No right secured by the Federal Constitution can be impaired or destroyed by a municipal ordinance, whatever may be the source from which the power to pass the same was derived. A statute or ordinance which amounts to a denial of the equal protection of the law to persons within the jurisdiction of the law-making body must be deemed unconstitutional and void, even if it is passed under the guise of the police power. (*Dobbins* v. *Los Angeles*, 195 U. S. 223, 237; *Gibbons* v. *Ogden*, 9 Wheat. 1, 210; *Missouri, Kansas & Texas R. Co.* v. *Haber*, 169 U. S. 613, 626; *Sinnot* v. *Davenport*, 22 How. [U. S.] 227, 243.)

But the defendants urge that the plaintiff has mistaken his remedy; that equity is only concerned with the protection of civil and property rights, and will not stay criminal or quasi criminal proceedings, whether the prosecution is for the violation of the common law, or the infraction of statutes or municipal ordinances. (*Davis* v. *American Society for the Prevention of Cruelty to Animals*, 75 N. Y. 362, 368; *Wallack* v. *Society for Reformation of Juvenile Delinquents*, 67 id. 23, 28; *Buffalo Gravel Corp.* v. *Moore*, 201 App. Div. 242, 246; affd., 234 N. Y. 542; *Delaney* v. *Flood*, 183 id. 323; *Genesee Recreation Co.* v. *Edgerton*, 172 App. Div. 464, 466; *Lee* v. *O'Malley*, 140 id. 595, 598; *Eden Musee American Co., Ltd.,* v. *Bingham*, 125 id. 780, 782; *Perault* v. *Rand*, 10 Hun, 222.)

There is, however, an exception to this general rule. A court of equity will assume jurisdiction, and will enjoin the enforcement of a void ordinance where its enforcement will affect property rights and work irreparable injury. The criminality of the act complained of will not act as a bar to such relief where an injunction is necessary for the protection of one's property rights. (*Buffalo Gravel Corp.* v. *Moore*, 201 App. Div. 242, 244, and cases cited; *Biddles, Inc.,* v. *Enright*, 239 N. Y. 354, 367; *Star Company* v. *Brush*, 185 App. Div. 261; *Davis & Farnum Mfg. Co.* v. *Los Angeles*, 189 U. S. 207, 218; *Matter of Sawyer*, 124 id. 200, 210.)

The plaintiff has been arrested for one violation of the ordinance. The Special Term has properly refused to stay the prosecution of that particular charge. The moving papers, however, go further, and allege that the defendants threaten to arrest and prosecute the plaintiff for all subsequent infractions of the regulation, and that they intend to enforce the ordinance to the letter, and that, if they do so, their action will result in preventing him from keeping his market open as he is lawfully entitled to do, and will ruin his business, and cause him irreparable injury. These allegations are nowhere denied. Upon the record before us we have a case where the plaintiff will be subjected to continued oppressive and vexatious litigation, and where his property rights will seriously be interfered with, and where, as a result of the wrongful action on the part of the defendants, he will suffer irreparable injury. Under such circumstances it may fairly be said that he has no adequate remedy at law, and that he has brought himself within the exception to the rule that equity will not restrain the enforcement of a void ordinance.

The granting of an injunction *pendente lite* rests largely within the discretion of the court at Special Term. (*Hatch* v. *Western Union Telegraph Co.,* 93 N. Y. 641; *Witbeck* v. *Niagara, Lockport & Ontario Power Co.,* 214 App. Div. 371.) In view of the substantial claim of the plaintiff that the ordinance in question is an arbitrary and unwarranted interference with his constitutional rights we cannot say that such discretion has been abused in the present instance.

For these reasons we think that the order appealed from should be affirmed.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Order so far as appealed from affirmed, with ten dollars costs and disbursements.